IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DL3 PROPERTIES, LLC IN1801<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MORRIS INVEST, LLC and CLAYTON MORRIS,<br><br>　　　　Defendants. | Case No. 1:19-cv-02667<br><br>## Complaint and Demand for Jury Trial |

Plaintiff DL3 Properties, LLC IN1801 (hereinafter, "Plaintiff"), by counsel, hereby files its Complaint for Damages against the Defendants, Morris Invest, LLC ("Morris Invest") and Clayton Morris (collectively, "Defendants"). In support of its complaint, Plaintiff alleges and states the following:

## I.  INTRODUCTION

1.      Plaintiff is a closely held corporation that purchased real estate through what appears to be a Ponzi scheme operated by Defendants.

2.      The Plaintiff is among the unknown number of real estate investors who have purchased, from and through Defendants, real estate to be used as investment rental properties.

3.      Defendants pushed their "turnkey" real estate investment scheme through podcasts, YouTube videos, a website, and individual phone calls and emails. But Plaintiff has received none of the benefits promised by Defendants.

4.     This lawsuit seeks redress from Defendants for damages for statutory violations, breach of contract, promissory estoppel, conversion, and fraud.

5.     Plaintiff has been damaged in an amount to be determined at trial, plus punitive damages.

## II.  THE PARTIES

### Plaintiff

6.     The Plaintiff in this action purchased real estate investment properties in Indianapolis from and through Defendants.

7.     Plaintiff was damaged by the fraud, breach of contract, violations of the Indiana Deceptive Consumer Sales Act, and other misconduct by Defendants.

8.     Plaintiff DL3 Properties, LLC IN1801 is registered in the State of Indiana, and purchased properties from Defendants, which properties are located in Marion County, Indiana at 325/327 Bellville Avenue and 1322 W. 30th Street, Indianapolis, Indiana.  Members of DL3 Properties, LLC IN1801 are Dean Thorsell and Lilli Thorsell who are citizens of Oak Hill, Virginia, and therefore Plaintiff DL3 Properties, LLC IN1801 is a citizen of Virginia.

### Defendants

9.     Defendant Clayton Morris is a self-described real estate investor, host of *Investing in Real Estate* Podcast, and former co-host on the Fox & Friends Weekend show. Defendant Morris is a co-founder and owner of Defendant Morris Invest. Defendant Morris claims to have started Morris Invest to help individuals attain financial freedom and grow their personal wealth through passive income.

2

Defendant Morris resides in New Jersey. Defendant Clayton Morris is liable as an individual because he participated as an individual in the conduct alleged below and because Defendant Morris Invest has been so dominated by Mr. Morris and Morris Invest's separate entity so ignored that Morris Invest primarily transacts Mr. Morris's business instead of its own and can be called Mr. Morris's alter ego, and Mr. Morris used the corporate form of Morris Invest to commit fraud and cause injustice to Plaintiff. Defendant Clayton Morris is a citizen of New Jersey.

10.     Defendant Morris Invest is a Delaware limited-liability company which purports to help investors buy and renovate investment properties. Morris Invest promises to fill those investment properties with paying tenants, thereby providing its investors with a "turnkey" rental property. The members of Morris Invest are two revocable trusts: The Clayton Morris Revocable Trust and The Natali Morris Revocable Trust. The Trusts beneficiaries are Clayton Morris, Natalie Morris, and their children. The trustees of the Trusts are Clayton Morris and Natalie Morris, both citizens of New Jersey, and, therefore, Morris Invest is a citizen of New Jersey.

### III.   JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action under 28 U.S.C § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy for Plaintiff exceeds $75,000.00, exclusive of interest and costs.

12.     Morris Invest has sufficient minimum contacts with this judicial jurisdiction to provide this Court with personal jurisdiction. Specifically, Morris Invest has had systematic and continuous direct contact with the forum for a substantial period of time by convincing citizens of other states to buy investment

3

properties in Indianapolis, Indiana. Morris Invest's activities in and related to Indianapolis, Indiana give rise to the claims themselves.

13.     Defendant Clayton Morris has sufficient minimum contacts with this judicial district to provide this Court with personal jurisdiction. Specifically, Clayton Morris has had systematic and continuous direct contact with the forum for a substantial period of time by convincing citizens of other states to buy investment properties in Indianapolis, Indiana. Clayton Morris's activities in and related to Indianapolis, Indiana give rise to the claim itself.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and because the properties at issue are located in this judicial district.

## IV.   FACTUAL BACKGROUND

15.     Morris Invest lures potential investors by advocating its program through blogs, YouTube videos, and a podcast.

16.     Morris Invest persuades investors to participate in its program by claiming to have been founded on a three-step wealth building plan:

   a. Prospective investors schedule a consultation with Morris Invest, and Morris Invest has a thirty-minute phone call with the prospective investor to learn about his or her investment goals.

   b. The prospective investor selects a property offered by Morris Invest.

   c. Morris Invest handles property identification and rehabilitation, finds and secures tenants, sells the investor the property ("Rental Property")

in a rent-able condition, and all the investor needs to do is to collect

rent from the property provided by Morris Invest.

17.     These claims are false, however. Contrary to its express claims to

Plaintiff and other investors, Morris Invest and Clayton Morris are only marketers.

They use affiliates to actually identify, sell, rehabilitate, locate tenants for, and

manage the Rental Properties they convince their investors, including the Plaintiff,

to purchase.

18.     Plaintiff was told by Defendants that Morris Invest would handle

everything pertaining to the Rental Properties. Plaintiff was led to believe that they

would be dealing with Defendants only.

19.     However, in Indiana, Defendants use or used Oceanpointe Investments

Limited ("Oceanpointe"), Indy Jax Wealth Holdings, LLC, and/or Indy Jax

Properties, LLC (collectively, "Indy Jax") to handle identification, sale,

rehabilitation, tenant location, and property management of the Rental Properties

it convinces its investors, including the Plaintiff, to purchase.

20.     Although Defendants now claim that they had no involvement with

Oceanpointe and the other entities listed above, that's not what they told investors:

On Thursday, June 29, 2017, 4:25 AM, Clayton Morris <clayton@morrisinvest.com> wrote:

> Yes sir we have many LLC's that we use to hold our acquisitions before rehab. And that is just one of them we own.
>
> From: ██████████████
> Date: June 28, 2017 at 7:31:05 PM
> To: Clayton Morris <clayton@morrisinvest.com>
> Subject: Re: Earlier bird
>
> Just wondering, are you the owner of Oceanpoint holdings as well or is that a separate company that you just work with to manage the properties that you sell to investors like me?

21.     Defendants persuaded hundreds of investors to purchase Rental Properties in Marion County during 2017 and 2018.

22.     Defendants did not evaluate whether their investors were sophisticated, accredited, or otherwise had any particular financial acumen or experience in real estate investing. Instead, they appear to have targeted inexperienced investors, many of whom ultimately lost large proportions of their savings or retirement funds in the scheme.

23.     For its part, and in accordance with its partnership with Morris Invest and Clayton Morris, Oceanpointe, Indy Jax Wealth Holdings, LLC, and/or Indy Jax Properties, LLC purchased hundreds of homes in the Indianapolis area. Many of these homes came from tax sales.

24.     Unbeknownst to Plaintiff, Morris Invest and Clayton Morris matched their clients with Oceanpointe's properties and then Oceanpointe, in addition to profiting from the sale and unbeknownst to the Plaintiff, was tasked with rehabbing, renting, and managing the homes.

25.     Plaintiff purchased two single-family homes, from and through Defendants, to be used as rental properties for the purpose of generating "passive" rental income to Plaintiff.

26.     Plaintiff was told that the rental properties purchased from and through Defendants would be rehabbed by Morris Invest using the purchase funds provided by Plaintiff.

27.     Plaintiff was told that Defendants would find, screen, and secure tenants for each of the Rental Properties.

28.     In other words, Defendants represented to Plaintiff that, for the money invested, Plaintiff would receive a "turnkey" Rental Property, complete with paying tenant and property management services.

29.     Plaintiff was told by Defendants that its Rental Properties would be or had been rehabilitated using the purchase Funds.

30.     Plaintiff has not received any rent checks.

31.     Plaintiff eventually learned that its Rental Properties had not been rehabilitated, as promised by Defendants and as paid for by Plaintiff.

32.     Plaintiff eventually learned that its Rental Properties were not, in fact, being rented by tenants and were sitting vacant.

33.     Eventually, Plaintiff learned that it was Oceanpointe, and an entity called Blue Sky, or some other entity, that had been tasked with rehabilitating and managing the Rental Properties and securing tenants.

34.     Defendants sold Plaintiff a "passive income" program that Defendants knew was not what it was portrayed it to be—a means for Plaintiff to invest in "turnkey" rental properties generating immediate income.

35.     Defendants intentionally and materially misrepresented the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiff.

36.     Defendants knew, at the time they made these misrepresentations, that their program provided none of the features or benefits it advertised.

37.     Defendants Clayton Morris and Morris Invest have denied responsibility to Plaintiff for Plaintiff's losses, instead pointing their fingers at Oceanpointe.

38.     Defendants have been operating a Ponzi scheme in which Defendants used the purchase funds paid by new investors to send "rent" checks to earlier investors.

39.     The Plaintiff did not have any role in selecting or analyzing the Rental Properties and now Plaintiff owes thousands of dollars for rehabilitation work, code violations, or even tax liens. Dollars they cannot afford because they were promised "turnkey" properties after their initial investment with Defendants. This is on top of the fact that Plaintiff paid tens of thousands of dollars for properties that are now, essentially, worthless.

40.     Based upon complaints by Plaintiff and others, the Indiana Attorney General's office opened an investigation into Defendants.

41.     In February, 2018, a representative of Defendants (Glenn Radford) made representations via phone calls and emails that Defendants were offering "turnkey" real estate investment opportunities. Over the course of two months, the Thorsells received over 40 emails from Defendants offering properties. Based on the representations made by Defendants, the Thorsells purchased two of these properties offered by Defendants: on March 7, 2018, they purchased a property for $72,500 (inclusive of rehab costs) and on April 4, 2018, they purchased a property for $51,500 (inclusive of rehab costs). When the Thorsells began to get code violation notices on both properties, they contacted Defendants for the status on the rehab on the properties, but received no information until June 5, 2018, when the Thorsells received an email saying that Morris Invest only "referred" the Thorsells to Oceanpointe, so Oceanpointe was responsible for the rehab of the properties. Prior to that email the Thorsells were told, and believed, that everything – the purchase, the rehab, securing renters – was being done by Morris Invest and its subsidiary Blue Sky. The Thorsells were forced to sell the properties at a combined loss of $89,588 because they could not pay someone else to do the rehab that Morris Invest had promised to do for the purchase price. The Thorsells, through Plaintiff DL3 Properties, LLC IN1801, seek damages of $268,764 (the loss of $37,477 on one property and $52,111 on the other, trebled), as well as lost rental income and reimbursement for the code violation fines they incurred.

## V.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

### Count 1 – Breach of Contract

42.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

43.     Plaintiff entered into Purchase Agreements with Defendants providing that, for the purchase price of each Rental Property, Defendants would sell the Rental Properties to Plaintiff, rehabilitate the properties, identify tenants, screen tenants, secure tenants, manage the Rental Properties, and provide rent checks to Plaintiff.

44.     The Purchase Agreements entered into by Morris Invest/Clayton Morris and Plaintiff are attached to this complaint as Exhibits 1 and 2.

45.     Plaintiff fulfilled its duties and responsibilities pursuant to its Agreements with Defendants.

46.     Defendants breached the Agreements with Plaintiff by accepting the funds from Plaintiff intended to purchase and rehabilitate the properties, then failing to rehabilitate the properties.

47.      Defendants breached the Agreements with Plaintiff by failing to identify, screen, and secure tenants for the Rental Properties.

48.     Defendants breached the Agreements with Plaintiff by failing to fulfill their property management obligations with respect to the Rental Properties.

49.     As a result of Defendants' breach of contract, Plaintiff suffered damages.

50.     As a result of Defendants' breaches, Defendants are obligated to pay Plaintiff all amounts which accrued and are owed, with interest.

## Count 2 – Promissory Estoppel

51.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

52.     Defendants made a clear and unambiguous promise to Plaintiff that Defendants would sell the Rental Properties to Plaintiff, rehabilitate the properties, identify tenants, screen tenants, secure tenants, manage the Rental Properties, and provide rent checks to Plaintiff.

53.     Defendants have breached that promise by failing to rehabilitate the Rental Properties, identify tenants, screen tenants, secure tenants, manage the Rental Properties, and provide rent checks to Plaintiff.

54.     Plaintiff relied on Defendants' promises by providing funds to Defendants to purchase and rehabilitate the Rental Properties.

55.     Plaintiff's reliance on Defendant's promises was reasonable and foreseeable.

56.     Plaintiff's reliance on Defendants' promises caused them harm.

## Count 3 – Fraud / Deception

57.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

58.    Defendants Morris Invest and Clayton Morris knowingly and intentionally made false statements of important existing facts, namely, that Morris Invest and Clayton Morris would sell the Rental Properties to Plaintiff, rehabilitate the properties, identify tenants, screen tenants, secure tenants, manage the Rental Properties, and provide rent checks to Plaintiff.

59.    Defendants Morris Invest and Clayton Morris knew the statements were false when they made them, or they made them recklessly without knowing whether they were true or false, because it was always Defendants' intention either to fail to perform these tasks altogether, or to farm them out to Oceanpointe and other entities.

60.    Defendants made the false statements with the intent to obtain property, namely, the purchase Funds provided by Plaintiff.

61.    Defendants Morris Invest and Clayton Morris made the statements to cause Plaintiff to act upon them.

62.    Plaintiff justifiably or reasonably relied and acted upon Defendants Morris Invest's and Clayton Morris's statements.

63.    Because neither Morris Invest nor Clayton Morris nor Oceanpointe, Indy Jax Wealth Holdings, LLC, Indy Jax Properties, LLC, or any other entity controlled by Defendants rehabilitated the Rental Properties, secured tenants for the properties, or performed property management services for the properties, and failed to provide rent payments to Plaintiff, Plaintiff was injured as a result of its reasonable reliance on Defendants' statements.

12

64.     Defendants' conduct is in violation of Indiana Code section 35-43-5-3.

65.     Pursuant to the Indiana Crime Victim's Relief Act, Indiana Code section 34-24-3 et seq., Plaintiff is entitled to the following compensation:

    a.   An amount three times the actual damage suffered by Plaintiff;

    b.   The costs of the action;

    c.   The costs of collection;

    d.   Attorney's fees.

### Count 4 – Conversion

66.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

67.     Defendants knowingly or intentionally exerted unauthorized control over Plaintiff's property for Defendants' own benefit, in exclusion and defiance of Plaintiff's ownership rights.

68.     Specifically, Defendants converted the funds provided by Plaintiff to Defendants specifically and expressly for the purpose of rehabilitation of the Rental Properties ("the Funds").

69.     The Funds were a determinate sum provided by Plaintiff in the amount of $124,000 and are a special chattel.

70.     Defendants were entrusted to apply the funds provided by Plaintiff for the specific purpose of rehabilitation of the Rental Properties.

71.     Defendants received the Funds but did not use the Funds as directed by and promised to Plaintiff. The Rental Properties were not rehabilitated.

72.     Instead of using the Funds for the purpose provided by Plaintiff, Defendants retained the Funds for their own benefit.

73.     Plaintiff lost the Funds as a result of Defendants' conversion of those Funds.

74.     Defendants' conduct is in violation of Indiana Code section 35-43-4-3.

75.     Pursuant to the Indiana Crime Victim's Relief Act, Indiana Code section 34-24-3 et seq., Plaintiff is entitled to the following compensation:

     a.  An amount three times the actual damage suffered by Plaintiff;

     b.  The costs of the action;

     c.  The costs of collection;

     d.  Attorney's fees.

## Count 5 – Negligence

76.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

77.     Defendants owed a duty to the Plaintiff to properly screen, hire, retain, and supervise the company it engaged to perform the services it promised Plaintiff.

78.     In failing to properly screen, hire, retain, and supervise Oceanpointe and other entities, Defendants breached their duty to Plaintiff.

79.     Defendants owed a duty to Plaintiff to take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and other entities' failure to rehabilitate the Properties, locate tenants for the

14

Properties, manage the Properties, and perform other services promised by Defendants to Plaintiff.

80.     Defendants breached their duty to Plaintiff by failing to take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and other entities' failure to rehabilitate the Properties, locate tenants for the Properties, manage the Properties, and perform other services promised by Defendants to Plaintiff.

81.     As a direct and proximate result of Defendants' above-described negligence, Plaintiff has suffered damages.

82.     Defendants' negligence, in failing to perform the rehabilitation on the Properties and failing to secure tenants who would occupy and maintain the Properties, was the proximate cause of physical damage to the Properties because the Properties remained empty, neglected, and unmaintained.

83.     Plaintiff lives out of state and could not perform maintenance and could not have been aware of the damage that was occurring.

## Count 6 – Indiana Deceptive Consumer Sales Act

84.     Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

85.     Each purchase and sale of a Rental Property is a "consumer transaction" within the meaning of the Indiana Deceptive Consumer Sales Act ("Act").

86.     Defendants are "suppliers" within the meaning of the Act in that each regularly engages in or solicits consumer transactions.

87.     Plaintiff is a "consumer" within the meaning of the Act.

88.     Plaintiff has given notice in writing to Defendants in accordance with Ind. Code § 24-5-0.5-5(a).

89.     Defendants' deceptive acts described above have not been cured.

90.     The Defendant's actions described above are unfair, abusive, and deceptive, and constitute violations of Indiana's Deceptive Consumer Sales Act.

91.     Defendants intentionally and materially misrepresented to Plaintiff the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiff.

92.     Defendants caused Plaintiff to believe that it was purchasing a "turnkey" investment product, along with Defendants' services in rehabilitating the properties, securing tenants, and managing the properties.

93.     Defendants behaved deceptively in selling to Plaintiff the rehabilitation of their properties, screening and securing of tenants, and management of the properties.

94.     The acts, practices, misrepresentations and omissions by Defendants described above, occurring in the course of conduct involving trade or commerce, were not made in good faith and constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of the Indiana Deceptive Consumer Sales Act.

95.     The acts, practices, misrepresentations and omissions by Defendants described above are incurable deceptive acts under I.C. 24-5-0.5-2(a)(8), done by Defendants as part of a scheme, artifice, or device with an intent to defraud or mislead.

96.     Plaintiff reasonably relied on the acts, practices, misrepresentations and omissions by Defendants described above.

97.     Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived or damaged Plaintiff in connection with the sale and purchase of the Rental Properties.

98.     Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods whether or not a person has in fact been misled, deceived or damaged in violation of Indiana's Deceptive Consumer Sales Act.

99.     Plaintiff seeks monetary damages, treble damages and such other and further relief as set forth in Indiana's Deceptive Consumer Sales Act.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that judgment be entered against Defendants on all claims and request that the Court award the following relief:

    a)  Award to Plaintiff compensatory damages in an amount to be proved at trial;

b)  Award Plaintiff pre-judgment interest on all amounts owed;

c)  Award Plaintiff any and all special, incidental, and/or consequential damages, according to proof;

d)  Award Plaintiff treble damages and reasonable costs and fees pursuant to the Crime Victim's Relief Act, Ind. Code § 34-24-3.

e)  Award Plaintiff exemplary and/or punitive damages; and

f)  Grant such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

RILEY WILLIAMS & PIATT, LLC

/s/ *James A. Piatt*
James A. Piatt, Atty. No. 28320-49
Anne Medlin Lowe, Atty. No. 31402-49
301 Massachusetts Avenue
Indianapolis, IN 46204
(317) 633-5270
Fax:  (317) 426-3348
Email:        jpiatt@rwp-law.com
              alowe@rwp-law.com

# Jury Demand

Plaintiff respectfully demands a jury trial on all issues and counts so triable.

/s/ *James A. Piatt*
James A. Piatt

18